United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| NETGEAR, INC.,<br>        Plaintiff,<br>    v.<br>REDZONE WIRELESS, LLC,<br>        Defendant. | Case No. 16-cv-06974-BLF<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>[Re: ECF 9, 30] |

In this declaratory relief action, Defendant Redzone Wireless, LLC ("Redzone") moves to dismiss for lack of personal jurisdiction and lack of a case or controversy, or alternatively to transfer the case to the U.S. District Court for the District of Maine. Mot., 9. For the reasons set forth below, the Court GRANTS the motion to dismiss for lack of personal jurisdiction, and thus declines to address the remaining issues raised in Redzone's motion.

**I.  BACKGROUND**

In March 2015, Redzone, which is incorporated and has its principal place of business in Maine, reached out to declaratory judgment Plaintiff Netgear, Inc. ("Netgear"), which is incorporated in Delaware and has its principal place of business in California, to inquire whether an inventory of Netgear routers were available for purchase. Ex. 1 to Notice of Removal ("Compl.") ¶ 10, ECF 1; Mot. 7, 9. Netgear had manufactured the routers pursuant to specifications of a different wireless carrier, which Netgear told Redzone. Compl. ¶¶ 9, 11. To assist Redzone in determining whether the routers were compatible with its network, Netgear sent samples to Redzone for testing. *Id.* ¶ 11. Netgear informed Redzone that were it to purchase the routers, they would be sold "as is" with no further modifications or support. *Id.*

After Redzone determined that the routers were compatible with its network, the parties

negotiated an agreement whereby Redzone agreed to purchase routers from Netgear. *Id.* ¶¶ 12–13. On April 6, 2015, the parties executed Netgear's Standard Terms and Conditions Agreement ("T&C Agreement"). *Id.* ¶ 13; Ex. A to Compl. ("T&C Agreement"), ECF 1. Approximately three weeks later, on April 28, 2015, the parties entered into a Redzone Wireless Custom LG6100 SKU Side Letter ("Side Letter Agreement"), which obligated the parties to terms in addition to the T&C Agreement. Compl. ¶ 14; Ex. B to Compl. ("Side Letter Agreement"), ECF 1. Redzone took delivery of the routers in June 2015, and subsequently began installing them in customers' homes. Compl. ¶ 16.

Between the time Redzone tested the routers for compatibility with its network and began installing them in its customers' homes, Redzone made significant alterations to its wireless system. *Id.* Once Redzone installed the routers, it began receiving complaints of connectivity drops from its customers. *Id.* Redzone alerted Netgear of the issue on July 16, 2015, and requested a solution. *Id.*

Netgear was unable to discover the root cause of the connectivity issues, but nonetheless provided patches for the router firmware in November and December 2015, even though it contends it was not contractually required to do so. *Id.* ¶ 17. Netgear alleges that Redzone continued to demand that it provide additional support for the routers, and thus Netgear brought this declaratory judgment suit seeking a declaration that it is not obligated to devote further time and resources to the connectivity issues being experienced by Redzone's customers. *Id.* ¶¶ 18–19.

Redzone now moves to dismiss this action for lack of personal jurisdiction and lack of a case or controversy. Mot. 2. Alternatively, Redzone asks the Court to transfer the action to the District Court for the District of Maine. Netgear opposes the motion. Opp'n, ECF 20.

**II. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Redzone first argues that the Court does not have personal jurisdiction over it, and therefore, the action cannot be maintained in this Court. Mot. 4. Netgear contends, however, that this Court may exercise specific jurisdiction over Redzone. Opp'n 4.

**A. Legal Standard**

Federal Rule of Civil Procedure 12(b)(2) authorizes a defendant to seek dismissal of an

action for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (internal quotation marks and citation omitted). "[T]he plaintiff cannot simply rest on the bare allegations of its complaint." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (internal quotation marks and citation omitted). However, uncontroverted allegations in the complaint are accepted as true, and factual disputes created by conflicting affidavits are resolved in the plaintiff's favor. *Id.*

Where no applicable federal statute governs personal jurisdiction, "the law of the state in which the district court sits applies." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). "California's long-arm statute allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution." *Id.* "[D]ue process requires that the defendant 'have certain minimum contacts' with the forum state 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Ranza*, 793 F.3d at 1068 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)) (internal quotation marks and citation omitted).

**B.  Discussion**

"The strength of contacts required [for exercising personal jurisdiction] depends on which of the two categories of personal jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction." *Ranza*, 793 F.3d at 1068. Netgear contends that Redzone is subject to specific jurisdiction in this district, and therefore the Court addresses only whether it may exercise specific jurisdiction over Redzone. *See* Opp'n 4.

The Ninth Circuit has established a three-prong test for determining whether a non-resident defendant is subject to specific personal jurisdiction in a forum:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the

defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).

The exact form of the Court's jurisdictional inquiry depends on the nature of the claim at issue. For claims sounding in contract, the Ninth Circuit applies a "purposeful availment" analysis and asks whether a defendant has "purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). A claim for declaratory judgment as to the terms of a contract is an action sounding in contract. *See Stanford Ranch, Inc. v. Md. Cas. Co.*, 89 F.3d 618, 625 (9th Cir. 1996) ("[A] claim dependent on the existence of an underlying contract sounds in contract, as opposed to tort."). Therefore, the minimum contacts inquiry for Netgear's declaratory judgment claim focuses on whether Redzone purposefully availed itself of the privilege of conducting business within California.

### i. Purposeful Availment

Redzone argues that this Court lacks specific jurisdiction over it because it conducts no activities or business in California; it has no offices, employees, or banking in California; closes no sales and performs no services in California; installed none of Netgear's routers in California; and negotiated the terms of the contract with a Netgear employee in New Jersey via email. Mot. 6. Moreover, Redzone asserts that all persons familiar with the facts underlying this controversy are located in either Maine or North Carolina. *Id.*

Netgear responds that this Court may exercise specific jurisdiction over Redzone because Redzone purposefully availed itself of the privileges and protections of the laws of California. Opp'n 5. Netgear identifies the following facts to support its contention: (1) Redzone reached out to a California based company, (2) Redzone negotiated the sale of products shipped from California, (3) Redzone paid for the products via wire transfer to a bank in California,[1] (4) Redzone sought resolution to technical connectivity issues from Netgear's California based

---

[1] Redzone disputes this fact. *See* McKenna Decl. ISO Mot. ("McKenna Decl. I") ¶ 8, ECF 9-1; McKenna Decl. ISO Reply ("McKenna Decl. II") ¶ 4 & Ex A., ECF 23-1.

4

1 employees; and (5) Redzone threatened legal action against a Netgear, a California based
2 company. *Id.* Redzone disputes that any of these facts is sufficient, as nearly all of the contacts
3 occurred via email, it negotiated the contract with a Netgear employee located in New Jersey, and
4 because a single sale transaction by an out-of-state buyer like the one at issue here is insufficient
5 to establish personal jurisdiction. Reply 1–2, ECF 23.

The purposeful availment test requires "'in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson*, 357 U.S. at 253). "A defendant has purposely availed himself of the benefits of a forum if he "'deliberately' has engaged in significant activities within a State, . . . or has created 'continuing obligations' between himself and residents of the forum." *Id.* at 475–76 (internal citation omitted). Further, "[p]urposeful availment requires that the defendant engage in some form of affirmative conduct allowing or promoting the transaction of business within the forum state." *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts" or of a unilateral activity of another party or a third person. *Burger King*, 471 U.S. at 474–75.

"A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802. However, "an individual's contract with an out-of-state party *alone* [cannot] automatically establish sufficient minimum contacts." *Burger King*, 471 U.S. at 478 (emphasis in original). In context of claims arising from a contract, such as here, a "showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802. Further, "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing," may support a finding of specific jurisdiction. *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015)

5

(quoting *Burger King*, 471 U.S. at 479). As the Ninth Circuit made plain in *Picot v. Weston*, the inquiry is limited to examining the defendant's conduct in the jurisdiction, not those of the plaintiff. *Picot*, 780 F.3d at 1213.

Applying this standard, the Court concludes that Netgear has not demonstrated that Redzone has sufficient minimum contacts with California to subject it to specific personal jurisdiction here. As far as the Court can determine, the pertinent facts are as follows: Redzone reached out to Netgear, a Delaware corporation with its principal place of business in California, inquiring whether any routers were available for purchase. Wyckoff Decl. ISO Opp'n ("Wyckoff Decl.") ¶ 5, ECF 20-1; Ex. B to Wyckoff Decl., ECF 20-3; Compl. ¶ 10; Mot. 7, 9. The contract was negotiated exclusively via telephone, email, and text messaging between Redzone employees in Maine and Mike Wyckoff, a Netgear employee who works remotely and has New Jersey contact information. Wyckoff Decl. ¶¶ 4–6; McKenna Decl. I ¶¶ 5, 6. The agreement was executed remotely by a Netgear representative in California and a Redzone representative in Maine. Wyckoff Decl. ¶ 8; McKenna Decl. I ¶ 7. Under the agreement, Redzone was obligated to purchase the routers, and Netgear was to ship them to Redzone in Maine for installment in Maine. Wyckoff Decl. ¶ 9. When Redzone began experiencing problems with the routers, it contacted Wyckoff via email and requested a solution. *Id.* ¶ 11. Netgear had its principal engineer and his engineering team, all located in San Jose, California, provide patches for the router firmware on two occasions. *Id.* ¶ 11. Ultimately, the patches proved unsuccessful, and Redzone again reached out to Wyckoff demanding immediate resolution of the connectivity issues. *Id.* ¶ 13; McKenna Decl. I ¶¶ 11–13. In September 2016, Redzone's CEO sent an email to Andrew Green, Netgear's VP, Mobile Network Products located in Canada, and others at Netgear, indicating that Redzone's attorneys had been briefed on the issue and asked for contact information for Netgear's General Counsel. Wyckoff Decl. ¶ 14; Ex. E to Wyckoff Decl., ECF 20-6. Subsequently, Redzone sent a letter, via email and certified mail, to Netgear's general counsel (located in California), indicating that given Netgear's refusal to correct the defect in its product, it was revoking its acceptance of the routers, and sought to recover its purchase price and Redzone's cost associated with "covering." Ex. B to McKenna Decl. I. Thereafter, Netgear filed this action.

The facts of this case are similar to those in *Applied Underwriters, Inc. v. Combined Management, Inc.* 371 Fed. Appx. 834 (9th Cir. 2010). There, the plaintiff, a Nebraska corporation with its principal place of business in California, brought a breach of contract action in California against a Maine corporation that does not regularly conduct business outside of Maine. 371 Fed. Appx. at 835. The contract at issue was a workers compensation insurance policy that was negotiated exclusively via telephone and mail between plaintiff's employees in California and defendant's employees in Maine. *Id.* Activities related to the administration of the policy were conducted in Nebraska. *Id.*

The Ninth Circuit held that the plaintiff had failed to make a prima facie showing of purposeful availment for three reasons, two of which are relevant here. First, the Ninth Circuit found that it was not enough that the defendant had initiated the transaction:

> Even if Combined initiated the transaction through its broker, that initial contact and the subsequent negotiations are insufficient on their own to establish purposeful availment because "ordinarily 'use of the mails, telephone, or other international communication simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state.'"

*Id.* (citing and quoting *Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991)) (alteration in original). Second, the Ninth Circuit rejected the plaintiff's argument that the contract envisioned continuing and wide-reaching contact with California, finding that there was no evidence in the record that the contract contemplated performance in California. *Id.*

Like in *Applied Underwriters*, the fact that Redzone initiated the transaction is insufficient to establish purposeful availment because all of the contact occurred via phone, email, or text messaging. *See id.*; Wyckoff Decl. ¶¶ 4–6; McKenna Decl. I ¶ 6. Similarly, without deciding the issue, the Court defers to Netgear's assertion that other than shipping the routers from California, the contract did not contemplate performance in California. *See Gray*, 913 F.2d at 761 (finding that where the invoice stated "as is, where is," the defendant did not want responsibility for the product after the sale, which supported finding no jurisdiction). And, the fact that the contract envisioned Netgear discharging its obligations in the forum state by shipping the product to Maine from California, "cannot, standing alone, justify the exercise of jurisdiction over" Redzone in

California. *Picot*, 780 F.3d at 1213 (finding fact that defendant traveled to California twice and sought California investors to support a venture pursuant to an oral agreement formed in Michigan, performed in Michigan, and directed to customers in Michigan, insufficient to support jurisdiction over defendant in California). Moreover, the Court must evaluate Defendant Redzone's contacts with the forum, not Netgear's contacts with Redzone or Netgear's contacts with the forum. *Id.*

As the Court concludes that both of the aforementioned factors are insufficient to warrant a finding of personal jurisdiction over Redzone in California, the only remaining question is whether the letter Redzone sent to Netgear's counsel suffices, in combination with the aforementioned contacts. The Court finds that it does not because Netgear does not allege that the letter was tortious or wrongfully interfered with its business, and the letter suggested options other than litigation to resolve the dispute. *See Bandai Am. Inc. v. Brown*, No. CIV 00-13364, 2002 WL 31417189, at *3–4 (C.D. Cal. June 1, 2002) (concluding that defendant did not purposefully avail himself of the benefits and protections of California law merely by sending cease-and-desist letters to plaintiff in California where there was no allegation that the letters were defamatory, tortious, or provably false, and the letters did not operate to wrongfully interfere with or misappropriate plaintiff's property); *PokitDok, Inc. v. Martin*, No. C 12-3947, 2012 WL 5425615, at *4 (N.D. Cal. Nov. 6, 2012) (cease and desist letter was insufficient to establish personal jurisdiction because the letter was not sent in conjunction with any enforcement action that would cause plaintiffs to take action in California and merely alerted plaintiffs that defendant might file a legal action against them); *cf. Cascade Corp. v. Hiab–Foco AB*, 619 F.2d 36, 36–38 (9th Cir. 1980) (no personal jurisdiction in declaratory judgment action where defendant initially sent plaintiff a cease and desist letter concerning patent infringement and the parties had subsequent correspondence about infringement where nothing was resolved).

Because Netgear has failed to establish that Redzone purposefully availed itself of the privilege of conducting activities in California, the Court need not address whether the suit arises out of Redzone's forum-related activities, or whether the exercise of jurisdiction would be reasonable. Accordingly, the Court GRANTS Defendant's motion to dismiss for lack of personal

8

jurisdiction.

For the foregoing reasons, the Court DISMISSES this action. The Clerk is directed to close the file.

**IT IS SO ORDERED.**

Dated: May 31, 2017

/s/ Beth Labson Freeman
BETH LABSON FREEMAN
United States District Judge